*NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MU SIGMA, INC., | : | |
| | : | |
| Plaintiff, | : | Civil Action No.: 12-1323 (FLW) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| AFFINE, INC., a Delaware Corporation, | : | |
| and AFFINE ANALYTICS CORP., | : | |
| a New Jersey Corporation, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**WOLFSON, District Judge:**

     Defendants, Affine, Inc. ("AI") and Affine Analytics Corp. ("AAC") (collectively, "Defendants"), move to dismiss Plaintiff Mu Sigma, Inc.'s ("Plaintiff" or "Mu Sigma") Second Amended Complaint, in which Plaintiff asserts various causes of action relating to allegations that AI and AAC illegally acquired, and continue to use, Plaintiff's business proprietary information, including information regarding Plaintiff's employees and clients.  In response, Defendants challenge that it is chronologically impossible for AI and AAC to have committed, or participated in, any of the factual allegations set forth in the Complaint as those two business entities were not formed when the alleged illegal acts were committed; as a result, Defendants maintain that the Complaint is woefully insufficient to state any claims.  For the reasons that follow, the Court **GRANTS** Defendants' motion in its entirety.  Plaintiff's Second Amended Complaint is **DISMISSED**.

## PROCEDURAL HISTORY AND BACKGROUND FACTS

Plaintiff commenced this action in the Law Division of the New Jersey Superior Court, Somerset County on December 20, 2011. In addition to the initial complaint, Plaintiff filed an order to show cause, whereby it sought preliminary injunctive relief against the original defendants, including AI and AAC.[1]  In response, the original defendants removed the case to this Court based on diversity jurisdiction.  After removal, Plaintiff renewed its motion for a preliminary injunction.  Challenging this Court's jurisdiction, the original defendants moved to dismiss for lack of personal jurisdiction. At the conclusion of the hearing on that motion, the Court dismissed all the defendants -- Affine Analytics Ltd. and the founders of the three Affine corporations, Abhishek Anand, Manas Agrawal, Shivaprasad K.T., and Vineet Kumar (hereinafter, "Founders") – except for AI and AAC.  It is important to note that none of the claims in the Second Amended Complaint are asserted against these individual defendants because, as I have found earlier, the Court does not have personal jurisdiction of these Indian citizens.  After this Court's jurisdictional decision, Defendants filed a motion for a more definite statement before the Magistrate Judge. While the Magistrate Judge denied that motion, she ordered Plaintiff to submit a Second Amended Complaint ("the Complaint"), which is the subject of this motion.

Plaintiff is a global provider of consulting and analytic services, which helps companies implement data-driven decision-making systems. Compl., ¶ 8. Plaintiff contends that it "has spent time and resources developing and cultivating its client relationship," and it depends on

---

[1]     In the original complaint, Affine Analytics Ltd., Affine Inc. and Affine Analytics Corp. were named as defendants in this litigation. In addition, Abhishek Anand, Manas Agrawal, Shivaprasad K.T., and Vineet Kumar were also named.

those relationships for its existence. *Id.* at ¶¶ 9-10. Thus, its business would be "seriously undermined" if the business proprietary information was misappropriated. *Id.*

The individual founders were once employees of Mu Sigma in India, and they entered into employment contracts with Mu Sigma, containing non-solicitation, non-disclosure and non-competition clauses.  Plaintiff alleges that prior to the incorporation of AI and AAC, the individuals, while still employed at Mu Sigma, improperly acquired proprietary information, including Plaintiff's U.S. customer lists, sales reports and confidential agreements. *Id.* at ¶¶ 12, 16.  Plaintiff further alleges that the Founders used the confidential information to illegally benefit AI and AAC by building and developing the companies' customer base, internal business models and technical applications. *Id.* at ¶¶ 16, 18.  Hence, Plaintiff claims that AI and AAC[2] "willfully and maliciously conspired [with the Founders] and took Mu Sigma's proprietary information, employees, and clients", and AI and AAC continue to use "the knowledge and materials wrongfully obtained by the Affine founders to this day." *Id.* at ¶ 4.

As examples of misappropriation, importantly, Plaintiff references certain incidents prior to the incorporation of AI and AAC. *See Id.* at ¶¶ 25-32.  Plaintiff claims that on December 7, 2010, Vineet Kumar stated in an email that he obtained a significant amount of Mu Sigma materials and requested others to gather more information. Additionally, Mr. Kumar allegedly sought out a list of Mu Sigma's client email addresses. *Id.* at ¶ 29.  Subsequently, Plaintiff alleges that on December 15, 2010, Abhishek Anand sent an email to other individuals in which Mr. Anand made specific reference to the pricing structure of Mu Sigma's services and commented on how "their new company will deliberately undercut" Mu Sigma's prices. *Id.* at ¶

---

[2]      AI was incorporated in Delaware on May 18, 2011, *see* Compl., ¶ 21, and AAC was incorporated in New Jersey on September 8, 2011.  *Id.* at  ¶ 22.

30. Plaintiff further alleges that Mr. Anand also sent an email containing a list of every employee at a director level or higher in Mu Sigma's retail department. *Id.* at ¶ 32. Moreover, Plaintiff accuses Mr. Anand of utilizing his position at Mu Sigma to obtain the Master Vendor Agreement and Statement of Work for a major computer software company client. *Id.* at ¶ 31. It is important to reiterate, all alleged acts occurred in late 2010, approximately six months prior to the incorporation of AI, and more than nine months prior to the existence of AAC.

Based on these allegations, Plaintiff asserts various causes of action in the Complaint against AI and AAC, which include: (1) tortious interference with prospective economic advantage; (2) tortious interference with contractual relations; (3) civil conspiracy to interfere with the prospective economic advantage and contractual relations; (4) civil conspiracy to interfere with contractual relations; (5) fraud/fraudulent misrepresentation; (6) unfair competition; (7) misappropriation of trade secrets; (8) trade libel and disparagement; (9) violations of New Jersey's Computer Related Offenses Act; (10) violations of the Federal Computer Fraud and Abuse Act; (11) unjust enrichment; (12) conversion; and (13) claims that the Affine corporations are alter egos of one another.

In the instant matter, Defendants move to dismiss those claims in their entirety.

## DISCUSSION

### I. Standard of Review

When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny,* 515 F.3d 224, 233 (3d Cir. 2008) (citation and

quotations omitted).  In *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), the Supreme Court clarified the 12(b)(6) standard.  The Court held that the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Id*. at 1965.  In affirming that *Twombly* standards apply to all motions to dismiss, the Supreme Court has explained that principle.  First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1948-49 (2009). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.*  Therefore, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Id.* at 1949.  Ultimately, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).  Moreover, in deciding a motion to dismiss, the Court may consider the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of Plaintiffs' claim. *Lum v. Bank of Am.,* 361 F.3d 217, 222 n. 3 (3d Cir. 2004).

The Third Circuit has reiterated that "judging the sufficiency of a pleading is a context-dependent exercise" and "[s]ome claims require more factual explication than others to state a plausible claim for relief."  *West Penn Allegheny Health System, Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010).  This means that, "[f]or example, it generally takes fewer factual allegations to state a claim for simple battery than to state a claim for antitrust conspiracy." *Id.*  That said, the Rule 8 pleading standard is to be applied "with the same level of rigor in all civil actions."  *Id.* (citations and quotations omitted).

## II.     Nature of the Second Amended Complaint

Before I begin with the pertinent legal analysis, I pause briefly to comment on the way Plaintiff has pled its Complaint.   Distilled to its essence, the bulk of Plaintiff's accusations are against the collective actions of the Founders.   Indeed, Plaintiff spends most of its Complaint accusing the Founders, while they were employed by Mu Sigma, of misappropriating various confidential and proprietary information, which information Plaintiff claims benefitted AI and ACC.   Plaintiff further claims that these types of conduct in the aggregate resulted, *inter alia*, in unfair competition.   Of particular importance, Plaintiff provides examples of purported illegal conduct – that occurred in mid- to late- 2010 -- as to each of the Founders, which acts took place prior to the incorporation of both AI and AAC.   While I note that Plaintiff has explained that these prior acts should be attributed to AI and ACC, and they are indicative of the alleged current and continuing illegal conduct committed by these Defendants, there appears to be a lack of any allegations of wrongdoing that have occurred **<u>after</u>** the formation of these companies -- other than Plaintiff's generalized suppositions regarding the unfair business practices of Defendants.   I will, thus, view Plaintiff's allegations in that light when determining whether Plaintiff has properly pled its claims against AI and AAC.

I further comment on Plaintiff's submission of various declarations and exhibits extraneous to the Complaint.   As counsel is well aware, Rule 12(b)(6) does not permit the parties to rely on any declarations, or exhibits not referenced in the Complaint.   In this regard, any attempts by Plaintiff to buttress its allegations of Defendants' wrongdoing with materials outside of the pleadings will not be considered by this Court.

### 1.   Tortious Interference with Prospective Economic Advantage

Under New Jersey law, this tort is separate and distinct from tortious interference with an existing contract. *See Slim CD, Inc. v. Heartland Payment Systems, Inc.*, No. 06-2256, 2007 WL 2459349 (FLW), at *1, *3 (D.N.J. Aug. 24, 2007) (citing *Printing Mart-Morristown v. Sharp Electronics Corp.*, 116 N.J. 739, 749 (1989)).  In this type of claim, a plaintiff is not required to show the existence of a contractual relationship, but must allege facts giving rise to some reasonable expectation of economic advantage. *Id.* at 37 (citing *Harris v. Perl*, 197 A.2d 359 (N.J. 1964)). Additionally, a plaintiff does not need to show actual loss of a contract, only that but for the defendant's interference, there was a reasonable probability that the plaintiff would have received the economic benefit. *Id.*  However, mere hope that the plaintiff would have entered into some future arraignment with the prospective customer is not sufficient. *See Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 184 (3d Cir. 1997); *see also Advanced Power Systems, Inc. v. Hi-Tech Systems, Inc.*, 801 F. Supp. 1450, 1459 (E.D. Pa. 1992). In short, in order to properly state a claim, a plaintiff must allege: (1) the existence of a reasonable expectation of an economic advantage; (2) the interference was done intentionally and with malice; (3) absent the interference there was a reasonable probability that the plaintiff would have received the anticipated economic benefits; (4) the injury caused the damage. *MacDougall v. Weichert*, 144 N.J. 380, 404 (1996) (citation omitted).

Here, Plaintiff alleges in a broad brush fashion that Defendants tortiously interfered with their prospective economic advantage by using misappropriated confidential materials to induce Plaintiff's potential customers to do business with Defendants.  *See* Compl., ¶ 40.  To that end, Plaintiff alleges that Defendants are in possession of sensitive business information -- which was taken from Plaintiff by the Founders – including client lists, sales and pricing information, work

products, and customer agreements.   Without alleging more, Plaintiff then accuses Defendants of "exploiting" those types of information to interfere with Plaintiff's relations with potential customers.  *Id.* at ¶ 40.  And, indeed, Plaintiff avers that Defendants have done so with malice, albeit without alleging any facts to support that assertion.

As I have commented previously, the Complaint is devoid of any specific allegations of wrongdoing on the part of AI or AAC; there are simply broad brush allegations that the companies are continuing to use misappropriated information gathered from Mu Sigma by the Founders.  This is not sufficient in light of the requirements under this cause of action.  First and foremost, Plaintiff has failed to plead facts indicating that the interference was done with actual malice.  Besides reciting the element of malice in its Complaint, Plaintiff has failed to allege any supporting facts that would give rise to an inference of malice.  *See* Compl., ¶ 39. This bare recital of the element is clearly insufficient to state a claim under *Iqbal*'s guidance.

Equally deficient, Plaintiff has failed to identify any prospective business relationship with which Defendants have interfered. To meet this requirement, a plaintiff must allege facts giving rise to some reasonable expectation of economic advantage. *Printing Mart-Morristown*, 116 N.J. at 751.  Here, Plaintiff fails to identify any business entity with which it had business relations that Plaintiff could have reasonably expected to obtain an economic benefit.[3]  Indeed, Plaintiff has not alleged any facts indicating what business it was in pursuit of, or how it reasonably expected to benefit from these ambiguous relationships prior to Defendants' alleged unfair business practices.  These failures are fatal to meeting the first and third prongs of the test.

---

[3]        Plaintiff refers to an email exhibit attached to Certification of Mr. Dhiraj Rajaram – Mu Sigma's founder – which, Plaintiff argues, shows that Defendants are soliciting Plaintiff's customers.  *See* Rajaram Cert., Ex. K.  For one, I cannot consider this document as it is extraneous to the Complaint, and more importantly, even if I were to rely on its contents, the email is not evidence of any tortious interference; rather, according to Plaintiff, the email was sent to solicit employees at Mu Sigma.

Hence, Plaintiff falls short of properly pleading a claim for tortious interference with a prospective economic advantage.

### 2. Tortious Interference with Contractual Relations

Plaintiff's claims of tortious interference with contractual relations fares no better.  In order to adequately state this claim, the complaint must contain facts alleging: (1) the existence of a protected interest; (2) interference with malice (3) a reasonable likelihood that the interference caused the loss of a prospective economic gain; and (4) the injury caused the damages. *See Printing Mart-Morristown*, 116 N.J. at 751-52.; *see also Sarmasti PLLC v. Emanuel*, No. A-1667-11T1, 2012 N.J. Super. Unpub. LEXIS 2820, at *1, *7 (App. Div. Dec. 17, 2012) (citing *MacDougall*, 144 N.J. at 404). With regards to the second prong, the New Jersey Supreme Court has defined malice in this context as not a general ill-will towards the victim, but as intentional interference without justification or excuse. *Printing Mart-Morristown*, 116 N.J. at 751-52.

Given that the facts are sparsely alleged in the Complaint as to this Count, I find that Plaintiff has not stated a claim for tortious interference with contractual relations.  For one, the element of malice is not sufficiently pled.  Plaintiff alleges only that "Defendants have maliciously induced and continue to seek to induce numerous clients of Plaintiff to place purchase orders with Affine instead and reduced orders made to Mu Sigma."  Compl., ¶ 48.  For the same reasons as explicated above, *see supra*, section II, 2, Plaintiff's bare recital that Defendants' alleged interference was carried out with "malice" falls short.  *Id.* at ¶¶ 48, 52.  Again, simply reciting the definition of malice is not the equivalent to pleading facts alleging the existence of malice.  *See Fowler*, 578 F.3d at 210.  Even if the Court were to infer – as suggested by Plaintiff -- that Defendants acted in this manner to decrease competition or to advance its own

financial interest, that inference would still be insufficient to establish the existence of malice. *See Dello Russo v. Nagel*, 358 N.J. Super. 254, 268 (App. Div. 2003) (finding that decreasing competition or increasing a financial interest is insufficient to support a claim for malice); *Sandler v. Lawn-A-Mat Chem. & Equip. Corp.,* 141 N.J.Super. 437, 451-452, (App. Div. 1976) (same); *Cox v. Simon*, 278 N.J. Super. 419, 432-33 (App. Div. 1995) (same).

Next, Plaintiff also fails to plead the existence of a protected interest and that there was a reasonable likelihood that Defendants' alleged interference caused the loss of a prospective economic gain.  Under these two prongs, Plaintiff must allege, among other things, that it had a reasonable expectation of economic benefit, that Defendants had knowledge of that expectancy, and that Defendants wrongfully and intentionally interfered with that expectancy. *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1167 (3d Cir. 1993).  To meet these requirements, Plaintiff alleges only that "many of [its] clients were and are being contacted by Defendants, specifically through the use of information gleaned from [misappropriated materials]" and as a result, "a number of Mu Sigma's clients, including a major national warehouse club, terminated their relationships with Plaintiff due to the malicious influence."  Compl., ¶ 50.  The Complaint does not come close to setting forth the facts necessary to plead the required elements of the claim.  While Plaintiff vaguely identifies an existing contract with a national warehouse club, Plaintiff does not inject any precision as to whether it had a reasonable expectation of economic benefit from this client, and perhaps, more damning, whether Defendants had knowledge of such expectancy or how Defendants interfered. *See Fox v. Goz (In re Target Indus. Inc.)*, 386 Fed. Appx. 233, 237 (3d Cir. 2010) (tortious interference with contractual relations requires allegations to support the notion that the defendant lured away, by devious, improper and unrighteous means, of the customer of another)(citations and quotations omitted).  Thus, merely

pointing to a loss of a contract, albeit vaguely, does not meet the requirements.  This claim is, therefore, dismissed as well.

As to Count Three – civil conspiracy to interfere with prospective economic advantage – and Count Four – civil conspiracy to interfere with contractual relations – both are dismissed since the dismissal of the underlying torts (Counts One and Two, respectively) requires the dismissal of the corresponding civil conspiracy claims. *See Middlesex Concrete Products & Excavating Corp. v. Carteret Indus., Ass'n*, 37 N.J. 507, 516 (1962) (finding dismissal of the underlying tort requires dismissal of the civil conspiracy claim under New Jersey law); *Assadourian v. Harb*, 430 Fed. Appx. 79, 82 (3d Cir. 2011). Because I have dismissed the underlying substantive torts in Counts One and Two, I need not engage in an analysis of these conspiracy claims.  Count Three and Four are, therefore, dismissed.

### 3.  Common Law Fraud/Fraudulent Misrepresentation

Plaintiff's fraud claim is premised on the notion that Defendants have made "material misrepresentations to current and prospective Mu Sigma clients regarding Plaintiff."  Compl., ¶ 96.  And, as a result of the alleged fraud, "[s]everal of Mu Sigma's clients were, in fact, induced into abandoning Mu Sigma in favor of Defendants based upon [the] mispresentations."  *Id.*  In the same claim, Plaintiff also alleges that the Founders "made material misrepresentations to Plaintiff when they agreed to the non-solicitation, non-competition and non-disclosure provisions in their employment contracts with Plaintiff."  *Id.* at ¶ 97.  Plaintiff claims that, consequently, it was induced "to divulge its confidential and proprietary information" to the Founders, and in turn, the Founders used the information to benefit AI and AAC.  *Id.*  Plaintiff's theories of fraud cannot state a claim.

In order to state a claim for fraud, the plaintiff must allege that the defendant made a 1) material misrepresentation of presently existing or past fact; 2) knew that it was false, and 3) intended that the defendant rely on this statement to the plaintiff's detriment. *NN&R, Inc. v. One Beacon Ins. Group*, 362 F.Supp.2d 514, 518 (D.N.J. 2005) (quoting *Nappe v. Anschelewitz, Barr, Ansell & Bonello*, 97 N.J. 37, 51-52 (1984); *Jewish Ctr. of Sussex Cnty. v. Whale*, 86 N.J. 619, 624-25 (1981).[4] Further, an allegation of fraud must meet the heightened pleading requirements of Rule 9(b), which provides that "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

Based on the facts alleged in the Complaint, Plaintiff has not stated a claim of common law fraud under the heightened pleading requirement. It appears Plaintiff attempts to plead two types of fraud in Count Six. First, Plaintiff claims that Defendants made material misrepresentations to Mu Sigma's clients in order to induce them into doing business with Defendants. Not only had Plaintiff failed to allege the misrepresentation of fact with particularity, those alleged fraudulent statements were not made to Plaintiff. Hence, Plaintiff cannot have relied on any statements to its detriment in this regard. Indeed, Plaintiff does not have standing to sue on behalf of its clients for any alleged fraud perpetrated on them by Defendants.

Next, Plaintiff accuses the Founders for making "material representations to Plaintiff when they agreed to . . . [certain] provisions in their employment contract with Plaintiff. The Affine Founders knowingly made these representations with the full intention to breach them,

---

[4]     Similarly, to sufficiently state a claim for fraudulent misrepresentation, a plaintiff must allege the following factors: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that people rely on this misrepresentation; (4) reasonable reliance thereon by the other person; and (5) damages. *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 172-73 (2005) (citing *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997)); *see Jewish Ctr. of Sussex Cnty. v. Whale*, 86 N.J. 619, 624-25 (1981).

and induce Plaintiff to divulge its confidential and proprietary information . . . to benefit Defendants." Compl., ¶ 97.   Again, Plaintiff attempts to attribute the alleged actions of the Founders to Defendants.   Fundamentally, Plaintiff cannot base its fraud claim against Defendants on the actions of the Founders, who committed these alleged acts of fraud prior to Defendants' existence.   Even if the Court were to consider the allegations, Plaintiff only alleges, in a broad and conclusory fashion, that the Founders made these material misrepresentations to Plaintiff so as to obtain confidential information that could then be used to induce Plaintiff's clients into abandoning relationships they had with Plaintiff.   This is nothing more than a "defendant-unlawfully-harmed-me" type statement that is insufficient under *Iqbal*.   Accordingly, Plaintiff has not stated a claim for fraud, and this count is dismissed.

### 4.   Unfair Competition

In Count VI, Plaintiff alleges that Defendants unfairly competed by wrongfully acquiring and using Plaintiff's trade secrets.   Compl., ¶ 102.   While the Complaint fails to specify the legal basis for this claim, Plaintiff, in its Opposition Brief, clarifies that it seeks relief under New Jersey state common law for unfair competition concerning misappropriation of trade secrets. Pl. Opp. Br., pp. 23-24.   In New Jersey, unfair competition is a broad concept, focusing on "fair play," and aiming "to promote higher ethical standards in the business world." *Ryan v. Carmona Bolen Home for Funerals*, 341 N.J. Super. 87, 92 (App. Div. 2001).   Accordingly, the law of unfair competition is "as flexible and elastic as the evolving standards of commercial [business ethics]." *N.J. Optometric Ass'n v. Hillman-Kohan*, 144 N.J. Super. 411, 427 (Ch. Div. 1976). That said, there are three relevant torts of unfair competition: "passing off" one's product as that of another; unprivileged imitation of another's product; and misappropriation or tortious exploitation of another's product. *See Columbia Broadcasting Sys., Inc. v. Melody Recordings,*

*Inc.*, 134 N.J. Super. 368, 377 (App. Div. 1975); *Sachs Furniture and Radio Co. v. Sachs Quality Stores Corp.*, 39 N.J. Super. 70, 85 (App. Div. 1956). In light of this framework, the court's goal in assessing the sufficiency of an unfair competition claim is to identify any misleading, deceptive, injurious, or otherwise wrongful business practice that would render competition unfair. *See Ryan*, 341 N.J. Super. at 92.

Here, Plaintiff appears to attribute the Founders' alleged conduct of misappropriation and tortious exploitation in 2010 to AI and AAC.  According to Plaintiff, the Founders, who were then employees of Mu Sigma, misappropriated client, employee, and pricing lists, as well as other valuable proprietary information. As alleged, the Founders then passed that information to Defendants, who wrongfully possess and continue to use this information to Plaintiff's detriment. Compl., ¶¶ 102-104.   In that connection, Plaintiff relies on *Golden Cruller & Doughnut Co. v. Manasher*, 95 N.J. Eq. 537 (Ch. Div. 1923), for the proposition that unfair competition exists when a former employee misappropriates an employer's customer lists in anticipation of opening a competing business.  However, seemingly absent from Plaintiff's analysis is the fact that the court in *Golden Cruller* confined its ruling to the conduct of the employees, rather than the business itself.  In other words, only the employees were found to have misappropriated trade secrets; the business, which was formed by these employees, was not the subject of the suit. *Cruller*, 95 N.J. Eq. at 537-38.  Indeed, this case underscores this Court's finding that any causes of action relating to misappropriation of Plaintiff's business information should be pursued against the Founders, not AI or AAC.  Thus, Plaintiff's reliance on *Golden Cruller* is misplaced.

Moreover, contrary to Plaintiff's assertions, the crux of a misappropriation claim turns on the direct taking of plaintiff's creative work by defendant. *Columbia*, 134 N.J. at 378-79. To that end, Plaintiff has not alleged that Defendants were directly involved with the taking of Plaintiff's

proprietary information. Rather, as the Court has consistently emphasized, Plaintiff's claims are directed at the Founders, who have been dismissed from this case.  Hence, Plaintiff's basis for unfair competition boils down to bare assertion that Defendants continue to use Plaintiff's confidential business information.  While the law of unfair competition is "flexible," beyond its conclusory allegation against AI and AAC, Plaintiff has not identified any misleading or deceptive behavior on the part of Defendants sufficient to support a claim of unfair competition; therefore, the Court dismisses Count VI.

### 5.  Common Law Misappropriation of Trade Secrets and the New Jersey Trade Secrets Act

Plaintiff avers in Count VII that Defendants misappropriated its trade secrets in violation of common law and the New Jersey Trade Secrets Act ("T.S.A."), N.J.S.A. 56:15-2.[5]  However, Plaintiff's reliance on the T.S.A. is misplaced because the T.S.A. "does not apply to misappropriation occurring before the effective date" of the Act, which was January 5, 2012. *See* Trade Secrets Act of 2010, ch. 161, N.J. Laws 780 (2012).  The bulk of the allegations relating to misappropriation of Plaintiff's confidential information by the Founders took place in 2010, and Plaintiff filed this suit in state court in 2011, which occurred prior to the passage of the T.S.A. As such, based on the timing, the T.S.A. cannot address these alleged wrongdoings.  To the extent Plaintiff alleges that Defendants, through the conduct of the Founders, are continuing to misappropriate Plaintiff's business information, those types of acts have not been pled sufficiently by Plaintiff for the same reasons why Plaintiff has not stated a claim under the common law.  Accordingly, the Court will only address Plaintiff's common law claim.

---

[5]     Plaintiff also references N.J.S.A. 2C:20-1, which pertains to criminal theft. Insofar as Plaintiff seeks to bring criminal allegations against Defendants, this claim is not properly before the Court. *See Linda R.S. v. Richard D.,* 410 U.S. 614, 619 (1973) (stating "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.").

In New Jersey, a common law misappropriation of trade secrets claim in an employment context requires a showing that: (1) a trade secret exists; (2) the secret information was communicated in confidence by the plaintiff to the employee; (3) the secret information was disclosed by that employee in breach of that confidence; (4) the information was acquired by a competitor with knowledge of the employee's breach of confidence; (5) the secret information was used by the competitor to the detriment of the plaintiff; and (6) the plaintiff took precautions to maintain the secrecy of the trade secret. *Rycoline Products, Inc., v. Walsh*, 334 N.J. Super. 62, 71 (App. Div. 2000) (citation omitted).

Here, it is undisputed for the purposes of this motion that the proprietary information in question constitutes trade secret.[6]  That said, Plaintiff's Complaint has insufficiently alleged the remaining elements of the claim.  The gravamen of Count VII involves the wrongful acquisition and disclosure of trade secrets by the Founders — not Defendants.  Indeed, the actions of the Founders, which occurred before the existence of AI and AAC, are irrelevant to a claim of misappropriation of trade secrets against Defendants.  In fact, Plaintiff fails to identify any misappropriation on the part of Defendants since their incorporation.  Instead, Plaintiff merely alleges that "Defendants have wrongfully and in bad faith gained unauthorized access to trade secrets," and that "[Defendants'] continue use of the knowledge and materials wrongfully obtained by the Affine Founders while employed by Mu Sigma to this day."  Compl., ¶ 123.  These statements are entirely conclusory, and therefore, insufficient.  As a result, the Court

---

[6]      In New Jersey, a common law trade secret may consist of any formula, pattern, device, or compilation of information that is used in business to obtain an advantage over competitors who do not know or use it. *See Sun Dial Corp. v. Rideout, 16 N.J. 252, 257 (1954); AYR Composition, Inc. v. Rosenberg*, 261 N.J. Super. 495, 504 (App. Div. 1993) (stating that where a service company is concerned, the names and addresses of its customers are private information and property of the company).

dismisses Count VII, as Plaintiff has failed to allege the required elements of a misappropriation claim against the corporate defendants.

### 6. Trade Libel and Product Disparagement

Plaintiff, in Count VIII, alleges that Defendants libeled Mu Sigma and disparaged its product by maliciously making "false allegations about Mu Sigma to Mu Sigma's current and prospective clients." *See* Compl., ¶¶ 128-29. Though trade libel and product disparagement claims may arise from a single statement, they are distinct torts under New Jersey law. *See Dairy Stores, Inc. v. Sentinel Pub. Co.*, 104 N.J. 125, 133 (1986). Trade libel consists in "communications made to a third person of false statements concerning the plaintiff, or plaintiff's property or business." *Enriquez v. West Jersey Health Sys.*, 342 N.J. Super. 501, 524 (App. Div. 2001)(citations omitted). By comparison, product disparagement concerns statements made about plaintiff's product, and "is an offshoot of the cause of action for interference with contractual relations." *Diary Stores*, 104 N.J. at 133. Here, the Court need not delve into the overlap and intricacies of these two doctrines, because Count VIII is entirely conclusory, and therefore, insufficient. The entirety of Plaintiff's factual allegations as they pertain to Count VIII reads as follows:

> 128. Defendants have repeatedly made false allegations about Mu Sigma to Mu Sigma's current and prospective clients.

> 129. Defendants made these statements with malice.

> 130. Mu Sigma has suffered and is suffering irreparable harm from Defendants' conduct because Affine have [sic] damages Mu Sigma's good will, business reputation, and name severely [sic] by this conduct.

Compl., ¶¶ 128-130.  These thread bare recitals are woefully insufficient to plead the elements of trade libel or product disparagement. Plaintiff has failed to identify any disparaging statements made by Defendants whatsoever, let alone allege that such statements were false and damaging to Plaintiff, its business, or its reputation. Moreover, there is no specific reference to whom the allegedly false statements were made or how such statements harmed Plaintiff. Worse still, Plaintiff sole argument in support of Count VIII is an erroneous affirmation that it has "sufficiently pled facts regarding . . . trade libel and business disparagement." (Pl. Opp. Br. at 27.)  Rather, giving all favorable inferences to the "facts" alleged by Plaintiff, the Court cannot discern any claim in Count VIII, and thus, this Count is dismissed.

### 7.   New Jersey Computer Related Offenses Act and the Computer Fraud and Abuse Act

In Counts IX and X, Plaintiff claims that "Defendants, through the Founders," knowingly accessed Mu Sigma's computers without authorization, and stole data belonging to Mu Sigma in violation of the New Jersey Computer-Related Offenses Act ("C.R.O.A."), N.J.S.A. 2A:38a-1 *et seq.*, and the Federal Computer Fraud and Abuse Act ("C.F.A.A."), 18 U.S.C. § 1030 *et seq.* (Pl. Sec. Am. Compl., p. 19-20.) As the factual narrative of these two claims is the same, the Court addresses them in tandem.  In relevant part, the C.R.O.A. provides a civil cause of action that requires a plaintiff to establish that the defendant purposefully or knowingly altered, damaged, took, or destroyed any data existing on plaintiff's computer, system, or network. *See* N.J.S.A. 2A:38A-3; *see also Fairway Dodge, LLC v. Decker Dodge, Inc.,* 191 N.J. 460, 468-69 (2007). Similarly, the C.F.A.A. prohibits the knowing or purposeful unauthorized access to, or transmission of, protected computer data, and provides a civil remedy where a plaintiff has suffered damages as a result. *See* 18 U.S.C. § 1030(a), (g); *Grant Mfg. & Alloying, Inc. v. McIlvain*, 499 Fed. Appx. 157, 159 (3d Cir. 2012).

Here, without going into details, Plaintiff, again, relies on the alleged conduct of the Founders -- when they were employed by Mu Sigma -- to support the allegations of computer fraud against Defendants.  The only allegation of direct wrongdoing by Defendants is in paragraph 145 of the Second Amended Complaint, which states, "Defendants intentionally accessed Mu Sigma's protected computer without authorization . . . in violation of [18] U.S.C. § 1030(a)(5)."[7] Needless to say, this bare allegation is entirely conclusory and unsupported by any facts.  Plaintiff does not specify how or whether Defendants allegedly stole its data or what in particular was stolen, much less alleged that Defendants did so with purpose or knowledge.

Moreover, to the extent that Counts IX and X assert that Defendants are vicariously liable for the intentional acts of the Founders, this claim cannot succeed. Under federal and New Jersey law, vicariously liability requires the existence of an agency relationship. *See Carter v. Reynolds*, 175 N.J. 402, 408 (2003); *AT&T v. Winback & Conserve Program*, 42 F.3d 1421, 1435 (3d Cir. 1994). In that connection, an agency relationship exists if the principal exerts control over "the time, manner, and method of executing the work." *AT&T*, 42 F.3d at 1445; *Carter*, 175 N.J. at 408. Here, Plaintiff has not alleged that Defendants exerted any control over the Founders. Further, it is chronologically impossible that the Founders were agents of Defendants at the time the Founders allegedly stole Plaintiff's data. At that time, the Founders were employees of Mu Sigma, and AI and AAC were not yet in existence. Thus, it logically follows that Defendants cannot be held vicariously liable for the alleged intentional acts of the Founders when the corporate defendants in fact did not exist.

---

[7]     Plaintiff mistakenly refers to 28 U.S.C. § 1030 throughout Count X, instead of 18 U.S.C. § 1030.

Accordingly, the Court dismisses Count IX and X, as Plaintiff fails to state a claim under the C.R.O.A. or C.F.A.A.

### 8. Unjust Enrichment

In Count XI, Plaintiff alleges that Defendants were unjustly enriched by knowingly, and in bad faith, receiving the benefits of Plaintiff's contracts, proprietary information, clients, and employees. *See* Compl., ¶168. Unjust enrichment consists of enriching one's self at the expense of another. *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (1994). However, New Jersey case law "does not recognize unjust enrichment as an independent tort cause of action." *Castro v. NYT Television*, 370 N.J. Super. 282, 299 (App. Div. 2004) (citation omitted). Instead, unjust enrichment is a quasi-contractual claim, used "as a justification for other torts such as fraud or conversion." *Id.* To establish unjust enrichment as a basis for quasi-contractual liability, "a plaintiff must show both that defendant received a benefit and that retention of the benefit would be unjust." *VRG Corp.*, 135 N.J. at 554. Thus, liability will be imposed only if "plaintiff expected remuneration from the defendant, or, if the true facts were known to plaintiff, he would have expected remuneration from defendant, at the time the benefit was conferred." *Callano v. Oakwood Park Homes Corp.*, 91 N.J. Super. 105, 109 (App. Div. 1966).

In the instant matter, Plaintiff alleges that the Founders violated their restrictive covenants by allegedly taking proprietary and confidential information. Compl., ¶21-23. Plaintiff further claims that Defendants obtained this information through the Founders and continue to use and benefit from this information. *Id.* However, Plaintiff does not allege that it ever conferred a benefit on Defendants, as opposed to the Founders, or that it expected a benefit from Defendants. Indeed, no contractual relationship, or any other relationship, existed between

20

Defendants and Plaintiff. Though Plaintiff, in its brief, attempts to buttress these allegations with extraneous exhibits, Rule 12(b)(6) does not permit the parties to rely on any declarations, or exhibits not referenced in the Complaint.[8] Therefore, Plaintiff has failed to state a claim for unjust enrichment, and the Court dismisses Count XI accordingly.

### 9.  Conversion

Finally, in Count XII, Plaintiff alleges that Defendants converted Plaintiff's confidential and proprietary information. Conversion is defined as "an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." *Barco Auto Leasing Corp. v. Holt*, 228 N.J. Super. 77, 83 (App. Div. 1988) (citation and quotations omitted). Conversion is an intentional tort, and requires that the defendant intended "to exercise a dominion or control over the goods [in a manner] inconsistent with the plaintiff's rights." *Chicago Title Ins. Co. v. Ellis*, 409 N.J. Super. 444, 456 (App. Div. 2009) (citation omitted). Importantly, conversion only applies to tangible personal property. *Gameco, Inc. v. Gedicke*, 299 N.J. Super. 203, 217 (App. Div. 1997).

Based on this framework, Plaintiff's claim for conversion fails as a matter of law. Plaintiff has not specified any tangible property over which Defendants exercised wrongful control. While Plaintiff alleges that Defendants are in possession of its client lists, pricing

---

[8]     Furthermore, even if the Court considered Plaintiff's exhibits in this respect, its claim for unjust enrichment would still fail. Plaintiff relies on the Founders' emails sent in late 2010, which "indicate the high value they placed on the materials they improperly obtained." (Pl. Opp. Br. at 29.)  This string of emails does not satisfy the elements of unjust enrichment in any way, as it merely evidences the Founders' value judgment, without showing that Plaintiff conferred a benefit upon Defendants, or expected remuneration from Defendants, or that Plaintiff had a quasi-contractual relationship with Defendants.

information and the like, these are not considered tangible objects for the purposes of conversion. *See e.g., Gameco*, 299 N.J. Super. at 217 (holding that confidential business information is not tangible property and therefore cannot satisfy a claim for conversion); *K-Tronik N.A., Inc. v. Vossloh-Schwabe Matsushita*, No. 06-0729, 2006 U.S. Dist. LEXIS 28265, at *3 (D.N.J. May, 10, 2006) (holding that customer lists, market information on customer purchases and sale prices, and customer service procedures do not constitute tangible property for the purposes of a conversion claim); *Slim CD,* 2007 U.S. Dist. LEXIS 62536 at *35 (finding that customer transaction data transmitted via computer is intangible property and not properly the subject of a conversion claim). Accordingly, Plaintiff's conversion claim fails, and the Court dismisses Count XII.

Finally, as to Count XIII, because the Court has dismissed all substantive counts, Plaintiff's claim of alter ego is dismissed as moot.

## CONCLUSION

Based on the foregoing, Defendants' motion to dismiss is **GRANTED**.

DATE:  July 16, 2013                                                       /s/ Freda L. Wolfson_____
                                                                                 Freda L. Wolfson, U.S.D.J.