**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

_____
                                        :
MU SIGMA, INC.,                         :
                                        :     Civil Action No. 3:12-cv-1323-BRM-TJB
                        Plaintiff,      :
        v.                              :
                                        :                **OPINION**
AFFINE, INC. and                        :
AFFINE ANALYTICS CORPORATION,           :
                                        :
                        Defendants.     :
_____:

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendants Affine, Inc. and Affine Analytics Corporation's ("Affine Analytics") (collectively, "Defendants") Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) or in the alternative to dismiss pursuant to Rule 12(c). (ECF Nos. 109-112.) Plaintiff Mu Sigma, Inc. ("Mu Sigma") opposes the Motion. (ECF No. 114.) Pursuant to Federal Rule of Civil Procedure 78(b), the Court did not hear oral argument. For the reasons set forth below, Defendants' Motion to Dismiss pursuant to Rule 12(b)(1) is **GRANTED**.

I.      **BACKGROUND**

        **A.  Factual Background**

        For the purposes of the motion to dismiss, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Further, the Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997). The central dispute in this matter is whether the

founders of Defendants "willfully and maliciously conspired and took Mu Sigma's proprietary information, employees, and clients for use at defendants' corporations, while in Mu Sigma's employ." (Third Am. Compl. (ECF No. 73) ¶ 4.)

Mu Sigma is a "global provider of decision sciences and analytics services, helping companies institutionalize data-driven making," incorporated in Delaware and headquartered in Illinois. (*Id.* ¶¶ 1, 8.) Its employees are allegedly "provided highly proprietary and confidential information about [Mu Sigma] and its operations, including the identity and contact information of the client to whom that employee is to be assigned." (*Id.* ¶ 9.)

In June 2010, Abhishek Anand ("Anand"), Vineet Kumar ("Kumar"), Manas Agrawal, and Shivaprasad K.T. ("K.T.") (collectively, the "Affine Founders"), while still employed by Mu Sigma,[1] conspired to create a new competitor company to be a "direct competitor of Mu Sigma by targeting customers, workforce, and insider pricing knowledge to cut into Mu Sigma's market." (*Id.* ¶ 18.) This new company became Affine, Inc., Affine Analytics Corporation, and Affine Analytics Pvt. Ltd. (collectively, "Affine"), "with each entity intended to have a common brand, finances, ownership, and control by some or all of [the Affine Founders]." (*Id.*) The Affine Founders had frequent meetings beginning in June 2010 to plan Affine. (*Id.* ¶ 19.) "As part of the scheme, the Affine Founders specifically sought out and took [Mu Sigma's] proprietary and confidential information, including U.S. customer lists, sales reports, confidential agreements, and products for the use and benefit of [Affine.]" (*Id.*) Mu Sigma argues as part of their employment

---

[1] As will be discussed later in this opinion, the Affine Founders worked directly for Mu Sigma Business Solutions Pvt. Ltd. in India, not Mu Sigma, Inc. in Illinois. (ECF No. 114 at 2; *see also* Ex. C to ECF No. 73.) Mu Sigma does not differentiate between the two companies in its Third Amended Complaint or discuss their relationship, but instead seems to refer to all Mu Sigma companies collectively as Mu Sigma.

agreement with Mu Sigma, the Affine Founders, signed employment contracts containing non-solicitation, non-disclosure, and non-competition clauses. (*Id.* ¶ 17.)

In November 2010, a Mu Sigma sales report was sent to the shareholders of Affine, and Manas Agrawal mentioned that this report "May (not) be of use." (*Id.* ¶ 20.) Also in November 2010, the Affine Founders forwarded a Mu Sigma email to Affine for review. (*Id.* ¶ 21.) "This email was not intended for distribution for those outside of Mu Sigma." (*Id.*) On December 7, 2010, Kumar, via email, stated, "he ha[d] obtained a significant amount of Mu Sigma materials and requests that the other Affine Founders steal as much additional information as possible." (*Id.* ¶ 22.) In that email, Kumar also sought a list of Mu Sigma client email addresses to be utilized by Affine to create business. (*Id.*) In December 2010, Anand emailed Mu Sigma's Master Vendor Agreement and Statement of Work with a major computer software company client to the other Affine Founders. (*Id.* ¶ 23.) On December 15, 2010, Anand sent an email to Affine regarding a major electronics warehouse company, which was a client of Mu Sigma at the time. (*Id.* ¶ 31.) In that email, Anand "makes a specific reference to Mu Sigma's costs and how their new company will deliberately undercut Mu Sigma." (*Id.*) On December 21, 2010, Anand also sent an email to the other Affine Founders, from his Mu Sigma email account, containing every person at a director level or higher in the software company's retail department and stated "this information should be used when the time is ripe." (*Id.* ¶ 24.)

On December 2010, Affine Analytics Pvt. Ltd., an Indian entity, was established by the Affine Founders. (*Id.* ¶¶ 11-12.) On May 18, 2011, Affine, Inc. was incorporated in Delaware by Anand. (*Id.* ¶ 13.) Anand was listed as the founder and the sole director of Affine, Inc. (*Id.*) On September 8, 2011, Affine Analytics Corporation was incorporated in New Jersey by Anand. (*Id.* ¶ 14.) Anand was registered with the State of New Jersey as the owner of Affine Analytics. (*Id.*)

Affine, Inc., Affine Analytics Pvt. Ltd., and Affine Analytics Corporation "are each comprised of the same ownership, officers, and employees." (*Id.* ¶ 15.) Anand, Kumar, and Agrawal are "founders, shareholders, officers, and/or employees of" all three entities. (*Id.* ¶ 16.) Moreover, the entities "share a common website and LinkedIn Page." (*Id.*)

Affine allegedly utilized a relationship that K.T. developed through his employment at Mu Sigma with a major national warehouse chain to secure contracts for Affine. (*Id.* ¶ 25.) Mu Sigma alleges K.Y. "[h]as provided significant testimonial evidence to Mu Sigma admitting his role in the development of Affine. He has admitted that there was a conspiracy among the Affine Founders to misappropriate Mu Sigma's proprietary and confidential information for the benefit of Affine." (*Id.* ¶ 26.)

Through the use of Mu Sigma's alleged confidential information and the Affine Founders' confidential knowledge, Mu Sigma alleges Affine has convinced a top U.S. wholesale warehouse to discontinue using Mu Sigma and to use Affine instead. (*Id.* ¶ 32.) Furthermore, on October 3, 2012, Anand solicited a Mu Sigma customer, a major global computer software developer on behalf of Defendants. (*Id.* ¶ 33.) "Affine had access to this customer's senior director through the use of the customer contracts stolen from Mu Sigma by the Affine Founders." (*Id.*) Affine further informed the senior director in the email "it could offer better pricing and applications than its current service provider," Mu Sigma. (*Id.*)

Mu Sigma alleges that "[a]mong the materials previously taken by the Affine Founders and given to Affine were copies of a master services agreement, statement of work for that particular customer, as well as Mu Sigma's internal pricing data." (*Id.*) In addition, prior to leaving Mu Sigma, the Affine Founders ranked Mu Sigma employees according to their usefulness to Affine in an excel spreadsheet. (*Id.* ¶ 34.) Mu Sigma alleges there are at least eleven of its former

4

employees now working at Affine, each of whom had non-compete, non-disclosure, and non-solicitation provisions in their employment contracts with Mu Sigma. (*Id.*)

## B. Procedural Background

Mu Sigma commenced this action in the Law Division of the New Jersey Superior Court, Somerset County on December 20, 2011, against Affine Analytics Corporation, Affine Analytics Pvt. Ltd., Anad, Kumar, Manas Agrawal, K.T., and Prachi Agrawal. (ECF Nos. 1-2 through 1-7, and 1-9.) In addition to the initial Complaint, the Honorable Yolanda Ciccone, A.J.S.C. ordered Defendants to appear and show cause by February 17, 2012, why a preliminary injunction should not be entered. (ECF No. 1-9.) On March 2, 2012, the matter was removed to this Court. (Not. of Removal (ECF No. 1).) On March 22, 2012, Mu Sigma renewed its Motion for a Preliminary Injunction. (ECF No. 10.) On April 9, 2012, Affine Analytics Corporation, Affine Analytics Pvt. Ltd., Anand, Kumar, Manas Agrawal, K.T., and Prachi Agrawal filed a Motion to Dismiss the Complaint for lack of personal jurisdiction. (ECF No. 15.) On April 18, 2012, Judge Freda L. Wolfson terminated the Motion for Preliminary Injunction without prejudice based on a question of jurisdiction. (ECF No. 22.)

On April 23, 2012, Mu Sigma filed an Amended Complaint against Affine Analytics Corporation, Affine Analytics Pvt. Ltd., Affine, Inc., Anand, Kumar, Manas Agrawal, K.T., and Prachi Agrawal. (ECF No. 24.) On July 17, 2012, Judge Wolfson granted in part and denied in part the Motion to Dismiss for lack of personal jurisdiction. (ECF No. 33.) Specifically, she dismissed Affine Analytics Pvt. Ltd, Anand, Kumar, Manas Agrawal, and Prachi Agrawal for lack of personal jurisdiction over these Indian entities and citizens, but found there was personal jurisdiction over Defendants. (*Id.*) On July 31, 2012, Defendants filed a Motion for a More Definite Statement. (ECF No. 36.) That motion was denied, but Mu Sigma was ordered to submit a Second

Amended Complaint. On October 18, 2012, Mu Sigma filed a Second Amended Complaint. (ECF No. 46.) On December 3, 2012, Defendants filed a Motion to Dismiss the Second Amended Complaint. (ECF No. 54.) On July 17, 2013, Judge Wolfson granted Defendants' Motion to Dismiss in its entirety and dismissed the Second Amended Complaint for failure to state a claim. (ECF No. 59.)

On July 31, 2013, Mu Sigma filed a Motion for Reconsideration as to Judge Wolfson's July 17, 2013 Order and Opinion. (ECF No. 61.) On March 24, 2014, Judge Wolfson denied Mu Sigma's Motion for Reconsideration, but granted it leave to file a third amended complaint in part. Accordingly, on April 14, 2014, Mu Sigma filed a Third Amended Complaint against Defendants alleging: (1) tortious interference with prospective economic advantage; (2) tortious interference with contractual relations; (3) unfair competition; and (4) common law misappropriation of trade secrets. (ECF No. 73.) On May 12, 2014, Defendants filed an Answer to the Third Amended Complaint. (ECF No. 76.) On June 2, 2014, they filed an Amended Answer. (ECF No. 78.) On July 18, 2017, Defendants filed a Motion to Dismiss the Third Amended Complaint for lack of jurisdiction and Motion for Judgment on the Pleadings. (ECF No. 110.) Mu Sigma opposes the Motion. (ECF No. 114.)

## II.  LEGAL STANDARDS

### A.  Federal Rule of Civil Procedure 12(b)(1)

 "Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Lance v. Coffman*, 549 U.S. 437, 439 (2007). "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "The standing inquiry focuses on whether the party invoking jurisdiction had

the requisite stake in the outcome when the suit was filed." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 360 (3d Cir. 2014) (citing *Davis v. FEC*, 554 U.S. 724, 734 (2008)).

A motion to dismiss for lack of standing is properly brought pursuant to Federal Rule of Civil Procedure 12(b)(1), because standing is a matter of jurisdiction. *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007) (citing *St. Thomas-St. John Hotel & Tourism Ass'n v. Gov't of the U.S. Virgin Islands*, 218 F.3d 232, 240 (3d Cir. 2000) ("The issue of standing is jurisdictional."); *Kaufman v. Dreyfus Fund, Inc.*, 434 F.2d 727, 733 (3d Cir. 1970) ("[W]e must not confuse requirements necessary to state a cause of action . . . with the prerequisites of standing.")). "Pursuant to Rule 12(b)(1), the Court must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the nonmoving party." *Ballentine*, 486 F.3d at 810 (citing *Warth v. Seldin,* 422 U.S. 490 (1975); *Storino v. Borough of Point Pleasant Beach,* 322 F.3d 293, 296 (3d Cir. 2003)). Nevertheless, on a motion to dismiss for lack of standing, the plaintiff "'bears the burden of establishing' the elements of standing, and 'each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.'" *FOCUS,* 75 F.3d at 838 (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992)). However, "*general factual* allegations of injury resulting from the defendant's conduct *may suffice.*" *Lujan,* 504 U.S. at 561 (emphasis added).

Article III "standing consists of three elements." *Spokeo*, 136 S. Ct. at 1547 (quoting *Lujan*, 504 U.S. at 560). To establish standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* "The plaintiff, as the party invoking federal

jurisdiction, bears the burden of establishing these elements." *Id.* (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)).

"A district court has to first determine, however, whether a Rule 12(b)(1) motion presents a "facial" attack or a "factual" attack on the claim at issue, because that distinction determines how the pleading must be reviewed." *Constitution Party of Pennsylvania*, 757 F.3d at 357. Here, Defendants assert a facial 12(b)(1) challenge. Therefore, the Court considers the allegations in the light most favorable to Mu Sigma. *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

## B. Federal Rule of Civil Procedure 12(c)

Federal Rule of Civil Procedure 12(c) provides: "After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Pursuant to Rule 12(c), the movant for judgment on the pleadings must establish: (1) that no material issue of fact remains to be resolved; and (2) the entitlement to judgment as a matter of law. *See Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (citing *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290-91 (3d Cir. 1988)). In resolving a motion made pursuant to Rule 12(c), the Court must view the facts in the pleadings and the inferences therefrom in the light most favorable to the non-movant. *See Rosenau*, 539 F.3d at 221.

Furthermore, even though a motion for judgment on the pleadings is appropriate after the pleadings have been closed, such a motion is reviewed under the same standards that apply to a motion to dismiss made under Rule 12(b)(6). *See Szczurek v. Prof'l Mgmt. Inc.*, 627 F. App'x 57, 60 (3d Cir. 2015) (citing *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010)); *see also Muhammad v. Sarkos*, 2014 WL 4418059 (D.N.J. Sept. 8, 2014) ("Where a defendant's motion is one for judgment on the pleadings pursuant to Federal Rule of Civil

Procedure 12(c), it is treated under the same standards as a Rule 12(b)(6) motion where it alleges that a plaintiff has failed to state a claim.") (citing *Turbe v. Gov't of V.I.*, 938 F.2d 427, 428 (3d Cir. 1991); *Gebhart v. Steffen*, 574 F. App'x 156, 157 (3d Cir. 2014)).

"While a complaint attacked by a Rule 12[] motion . . . does not need detailed factual allegations," *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007), the "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## III.    DECISION

Defendants argue Mu Sigma lacks standing because there is no privity of contract between Mu Sigma and Defendants or Mu Sigma and the Affine Founders, and thus Mu Sigma cannot allege: (1) tortious interference with prospective economic advantage; (2) tortious interference with contractual relations; (3) unfair competition; or (4) common law misappropriation of trade secrets. (ECF No. 109-20 at 14.) Specifically, they argue Mu Sigma was never the employer of the Affine Founders. (*Id.*) Mu Sigma argues, "Mu Sigma cannot be said to lack standing because it was a party to agreements with the Affine Founders," by virtue of the "Mu Sigma, Inc. Employee Proprietary Information Agreement" (the "Mu Sigma Agreement"). (ECF No. 114 at 5.)

The Court agrees with Defendants. Mu Sigma has failed to prove Article III standing, and "the party invoking federal jurisdiction, [Mu Sigma] bears the burden of establishing [standing]." *Spokeo*, 136 S. Ct. at 1547 (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)). To establish standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) *that is fairly traceable to the challenged conduct of the defendant*, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (emphasis added) (quoting *Lujan*, 504 U.S. at 560).

Mu Sigma lodges a series of allegations against Defendants without demonstrating it suffered an injury in fact that is fairly traceable to the conduct of Defendants. Mu Sigma and Defendants are not alleged to have any direct privity of contract or relationship. Instead, Mu Sigma

argues it is in privity of contract with Defendants' founders, the Affine Founders, and thus it has standing to bring this matter. (ECF No. 114 at 5.) Even assuming Mu Sigma was in privity of contract with the Affine Founders and it was sufficient to establish standing in this matter—a theory which Mu Sigma has failed to prove and for which it presents no supporting case law—Mu Sigma has also failed to establish it entered into an agreement with the Affine Founders.

In fact, Mu Sigma's opposition admits the Affine Founders were all employees of Mu Sigma Business Solutions Pvt. Ltd. in India, not Mu Sigma. (ECF No. 114 at 2; *see also* ECF No. 73, Ex. C.) In addition, the employment agreements attached to the Third Amended Complaint indicate the Affine Founders were to be employed in the Mu Sigma Business Solutions Pvt. Ltd. India office, not Mu Sigma's Illinois office. (*See* ECF No. 73, Ex. C.) Everything about the documents refer to Mu Sigma Business Solutions Pvt. Ltd. in India; they are signed by Mu Sigma Business Solutions Pvt. Ltd.; provide Mu Sigma Business Solutions Pvt. Ltd.'s address, telephone number, and fax number; and discuss the Affine Founders compensation in Indian money. (*Id.*) As such, the Third Amended Complaint and its Exhibits lack details demonstrating Mu Sigma specifically and not Mu Sigma Business Solutions Pvt. Ltd. suffered an injury in fact that is fairly traceable to the challenged conduct of Defendants. *Spokeo*, 136 S. Ct. at 1547(quoting *Lujan*, 504 U.S. at 560).

Mu Sigma's opposition relies exclusively on the Mu Sigma Agreement in attempting to establish privity and a relationship between itself and the Affine Founders. (ECF No. 114 at 5.) The Mu Sigma Agreement states:

> As a condition of my employment with Mu Sigma, Inc., its subsidiaries, affiliates, successors *or* assigns (together, the "Company"), and in consideration of my employment with the Company and my receipt of the compensation now and hereafter paid to me by Company, I agree to the following:

. . . .

> to hold in strictest confidence, and not to use, except for the benefit
> of the authorization of the Board of Directors of the Company, any
> Confidential Information of the Company.

(ECF No. 73-3 at 9 (emphasis added).) However, simply pointing to the Mu Sigma Agreement as evidence of privity is not enough, since every other document attached to the Third Amended Complaint signed by the Affine Founders indicates they entered into contract with and were employed by Mu Sigma Business Solutions Pvt. Ltd. in India. Moreover, the Mu Sigma Agreement does not confirm whether or not the Affine Founders were entering into that Agreement as a condition of its employment with Mu Sigma or "its subsidiaries, affiliates, successors or assigns." (ECF No. 73-3 at 9.) Indeed, the Third Amended Complaint lacks information regarding the relationship between Mu Sigma and Mu Sigma Business Solutions Pvt. Ltd., such as whether they are a single corporation, affiliates, parent/subsidiary, etc.

The absence of further details demonstrating: (1) the Affine Founders actually entered into the Mu Sigma Agreement with Mu Sigma and not Mu Sigma Business Solutions Pvt. Ltd.; (2) that the Affine Founders entered into any agreement with Mu Sigma; or (3) information regarding the relationship between Mu Sigma and Mu Sigma Business Solutions Pvt. Ltd. warrants dismissal under Rule 12(b)(1). Mu Sigma, "as the party invoking federal jurisdiction, bear[ed] the burden of establishing [standing]" and that it and not Mu Sigma Business Solutions Pvt. Ltd., as a separate entity, suffered an injury traceable to Defendants. *Spokeo*, 136 S. Ct. at 1547 (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)). Accordingly, Defendants' Motion to Dismiss for lack of jurisdiction based on standing is **GRANTED without prejudice**. Mu Sigma has until March 16, 2018, to file its last amended complaint. As a result, the Court does not reach Defendants' 12(c) argument because it lacks jurisdiction to do so at this time.

**IV. CONCLUSION**

For the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED** and their Motion for Judgment on the Pleadings is **MOOT**.

Date: February 27, 2018

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**