**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MU SIGMA, INC., | : |
| Plaintiff, | : Civil Action No. 3:12-cv-1323-BRM-TJB |
| v. | : |
| | : **OPINION** |
| AFFINE, INC. and | : |
| AFFINE ANALYTICS CORPORATION, | : |
| Defendants. | : |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendants Affine, Inc. and Affine Analytics Corporation's ("Affine Analytics") (collectively, "Defendants") Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) or in the alternative to dismiss pursuant to Rule 12(b)(6). (ECF No. 125.) Plaintiff Mu Sigma, Inc. ("Mu Sigma") opposes the Motion. (ECF No. 127.) Having reviewed the submissions filed in connection with the Motion and having declined to hear oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause shown, Defendants' Motion to Dismiss is **GRANTED** and the matter is **REMANDED** to New Jersey Superior Court, Somerset County.

**I. BACKGROUND**

**A. Factual Background**

For the purpose of this Motion, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Further, the Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). The central dispute in this matter is whether Defendants' founders "willfully and maliciously conspired and took Mu Sigma's proprietary information, employees, and clients for use at Affine, while in the employ of Mu Sigma's wholly-owned Indian subsidiary, Mu Sigma Business Solutions Private Limited ('Mu Sigma India')." (Fourth Am. Compl. (ECF No. 118) ¶ 4.)

Mu Sigma is a "leading global provider of decision sciences and analytics services, helping companies institutionalize data-driven making," incorporated in Delaware and headquartered in Illinois. (*Id.* ¶¶ 1, 8.) It contains officers across the "world including the United States and India." (*Id.* ¶ 8.) It also contains "significant operations in India and manages and operates its India business through its wholly-owned Indian subsidiary, Mu Sigma India." (*Id.* ¶ 11.) Its employees are allegedly "provided highly proprietary and confidential information about [Mu Sigma] and its operations, including the identity and contact information of the client to whom that employee is to be assigned." (*Id.* ¶ 9.)

Abhishek Anand ("Anand"), Vineet Kumar ("Kumar"), Manas Agrawal, and Shivaprasad K.T. are all former employees of Mu Sigma India and the founders of Defendants (collectively, the "Affine Founders"). (*Id.* ¶ 12.) "As part of their employment at Mu Sigma India, [the Affine Founders] . . . entered into employment contracts with Mu Sigma India containing non-solicitation,

2

non-disclosure, and non-competition clauses." (*Id.* ¶ 19.) While working for Mu Sigma India, the Affine Founders had access to confidential and propriety information of Mu Sigma India and Mu Sigma, the parent company of Mu Sigma India. (*Id.* ¶¶ 13, 20.) Therefore, Mu Sigma alleges the Affine Founders entered into an "Employee Proprietary Information Agreement with Mu Sigma, its subsidiaries, affiliates, successors or assigns ('Mu Sigma Agreement') with the intent to protect *inter alia* Mu Sigma's proprietary information." (*Id.* ¶ 20.) Pursuant to the Mu Sigma Agreement, the Affine Founders were to "hold in the strictest confidence, and not to use, except for the benefit of the Company, or to disclose to any person, firm or corporation without written authorization of the Board of Directors of the Company, any Confidential Information of the Company." (*Id.*)

It is alleged in June 2010, the Affine Founders, while still employed by Mu Sigma India, conspired to create a new competitor company to be a "direct competitor of Mu Sigma by targeting customers, workforce, and insider pricing knowledge to cut into Mu Sigma's global market." (*Id.* ¶ 21.) This new company became Affine, Inc., Affine Analytics Corporation, and Affine Analytics Pvt. Ltd. (collectively, "Affine"), "with each entity intended to have a common brand, finances, ownership, and control by some or all of [the Affine Founders]." (*Id.*) The Affine Founders had frequent meetings beginning in June 2010 to plan Affine. (*Id.* ¶ 22.) "As part of the scheme, the Affine Founders specifically sought out and took [Mu Sigma's] proprietary and confidential information, including U.S. customer lists, sales reports, confidential agreements, and products for the use and benefit of Affine." (*Id.*)

In December 2010, Affine Analytics Pvt. Ltd., an Indian entity, was established by the Affine Founders. (*Id.* ¶ 14.) On May 18, 2011, Affine, Inc. was incorporated in Delaware by Anand. (*Id.* ¶ 15.) Anand was listed as the founder and the sole director of Affine, Inc. (*Id.*) In September 2011, Affine Analytics Corporation was incorporated in New Jersey by Anand. (*Id.*

3

¶ 16.) Anand was registered with the State of New Jersey as the owner of Affine Analytics. (*Id.*) Affine, Inc., Affine Analytics Pvt. Ltd., and Affine Analytics Corporation "are each comprised of the same ownership, officers, and employees." (*Id.* ¶ 17.) Anand, Kumar, and Agrawal are "founders, shareholders, officers, and/or employees of" all three entities. (*Id.* ¶ 18.) Moreover, the entities "share a common website and LinkedIn Page." (*Id.* ¶ 17) Mu Sigma contends the Affine Founders actions implicates the Affine Defendants because they are "wholly controlled by the Affine Founders form their inception and were formed for the very purpose of competing with Mu Sigma." (*Id.* ¶ 31.)

In November 2010, a Mu Sigma sales report was sent to the shareholders of Affine, and Agrawal mentioned that this report "may (not) be of use." (*Id.* ¶ 23.) Also, in November 2010, the Affine Founders forwarded a Mu Sigma email to Affine for review. (*Id.* ¶ 24.) This email "was highly confidential and not intended for distribution for those outside of Mu Sigma." (*Id.*) On December 7, 2010, Kumar, via email, stated "he ha[d] obtained a significant amount of Mu Sigma materials and request[ed] that the other Affine Founders steal as much additional information as possible." (*Id.* ¶ 25.) In that email, Kumar also sought a list of Mu Sigma client email addresses to be utilized by Affine to create business. (*Id.*) Also in December 2010, Anand emailed Mu Sigma's Master Vendor Agreement and Statement of Work with a major computer software company client to the other Affine Founders. (*Id.* ¶ 26.) On December 15, 2010, Anand sent an email to Affine regarding a major electronics warehouse company, which was a client of Mu Sigma at the time. (*Id.* ¶ 31.) In that email, Anand "makes a specific reference to Mu Sigma's costs and how their new company will deliberately undercut Mu Sigma." (*Id.* ¶ 34) On December 21, 2010, Anand also sent an e-mail to the other Affine Founders from his Mu Sigma e-mail account, containing

4

"every person at a director level or higher in the software company's retail department." (*Id.* ¶ 27.) The email directed the Affine Founders to use the information "when the time is ripe." (*Id.*)

Mu Sigma further alleges "Defendants utilized a relationship that Shivaprasad K.T. had developed through his employment at Mu Sigma India with a major national warehouse chain, yet another Mu Sigma client, to secure contracts for [the Affine Defendants]." (*Id.* ¶ 28.) Shivaprasad K.T. has allegedly admitted to Mu Sigma his role in the development of Affine and that there was a conspiracy among the Affine Founders to misappropriate Mu Sigma's proprietary and confidential information for the benefit of Affine. (*Id.* ¶ 29.)

Using Mu Sigma's alleged confidential information and the Affine Founders' confidential knowledge, Mu Sigma alleges Affine has convinced a top U.S. wholesale warehouse to discontinue using Mu Sigma and to use Affine instead. (*Id.* ¶ 35.) Furthermore, on October 3, 2012, Anand solicited a Mu Sigma customer, a major global computer software developer, on behalf of Defendants. (*Id.* ¶ 33.) "Affine had access to this customer's senior director through the use of the customer contracts stolen from Mu Sigma by the Affine Founders." (*Id.*) Affine further informed the senior director in the email "it could offer better pricing and applications than its current service provider," Mu Sigma. (*Id.*)

Mu Sigma alleges that because of the Affine Founder's wrongful actions, the Affine Defendants are in possession of Mu Sigma's "proprietary and confidential information, including, but not limited to, U.S. customer lists, customer emails, sales reports, confidential agreements, and products." (*Id.* ¶ 30.) Mu Sigma further contends the Affine Defendants are "maliciously targeting Mu Sigma by using ex-Mu Sigma employees' restricted insider knowledge and connections, and stolen confidential pricing systems and applications, and are undercutting Mu Stigma's prices." (*Id.* ¶ 33.) In addition, prior to leaving Mu Sigma, the Affine Founders ranked Mu Sigma

employees according to their usefulness to Affine in an excel spreadsheet. (*Id.* ¶ 37.) Mu Sigma alleges there are at least eleven of its former employees now working at Affine, each of whom had non-compete, non-disclosure, and non-solicitation provisions in their employment contracts with Mu Sigma. (*Id.*)

### B. Procedural Background

Mu Sigma commenced this action in the Law Division of the New Jersey Superior Court, Somerset County on December 20, 2011, against Affine Analytics Corporation, Affine Analytics Pvt. Ltd., Anad, Kumar, Manas Agrawal, K.T., and Prachi Agrawal. (ECF Nos. 1-2 through 1-7, and 1-9.) In addition to the initial Complaint, the Honorable Yolanda Ciccone, A.J.S.C. ordered Defendants to appear and show cause by February 17, 2012, why a preliminary injunction should not be entered. (ECF No. 1-9.) On March 2, 2012, the matter was removed to this Court. (Not. of Removal (ECF No. 1).) On March 22, 2012, Mu Sigma renewed its Motion for a Preliminary Injunction. (ECF No. 10.) On April 9, 2012, Affine Analytics Corporation, Affine Analytics Pvt. Ltd., Anand, Kumar, Manas Agrawal, K.T., and Prachi Agrawal filed a Motion to Dismiss the Complaint for lack of personal jurisdiction. (ECF No. 15.) On April 18, 2012, the Honorable Freda L. Wolfson, U.S.D.J. terminated the Motion for Preliminary Injunction without prejudice based on a question of jurisdiction. (ECF No. 22.)

On April 23, 2012, Mu Sigma filed an Amended Complaint against Affine Analytics Corporation, Affine Analytics Pvt. Ltd., Affine, Inc., Anand, Kumar, Manas Agrawal, K.T., and Prachi Agrawal. (ECF No. 24.) On July 17, 2012, Judge Wolfson granted in part and denied in part the Motion to Dismiss for lack of personal jurisdiction. (ECF No. 33.) Specifically, she dismissed Affine Analytics Pvt. Ltd, Anand, Kumar, Agrawal, and Prachi Agrawal for lack of personal jurisdiction over these Indian entities and citizens but found there was personal

jurisdiction over Defendants. (*Id.*) On July 31, 2012, Defendants filed a Motion for a More Definite Statement. (ECF No. 36.) That motion was denied, but Mu Sigma was ordered to submit a Second Amended Complaint. On October 18, 2012, Mu Sigma filed a Second Amended Complaint. (ECF No. 46.) On December 3, 2012, Defendants filed a Motion to Dismiss the Second Amended Complaint. (ECF No. 54.) On July 17, 2013, Judge Wolfson granted Defendants' Motion to Dismiss in its entirety and dismissed the Second Amended Complaint for failure to state a claim. (ECF No. 59.)

On July 31, 2013, Mu Sigma filed a Motion for Reconsideration of Judge Wolfson's July 17, 2013 Order and Opinion. (ECF No. 61.) On March 24, 2014, Judge Wolfson denied Mu Sigma's Motion for Reconsideration, but granted it leave to file a third amended complaint in part. Accordingly, on April 14, 2014, Mu Sigma filed a Third Amended Complaint against Defendants alleging: (1) tortious interference with prospective economic advantage; (2) tortious interference with contractual relations; (3) unfair competition; and (4) common law misappropriation of trade secrets. (ECF No. 73.) On May 12, 2014, Defendants filed an Answer to the Third Amended Complaint. (ECF No. 76.) On June 2, 2014, they filed an Amended Answer. (ECF No. 78.) On August 8, 2016, the case was transferred to the undersigned.

On July 18, 2017, Defendants filed a Motion to Dismiss the Third Amended Complaint for lack of jurisdiction and Motion for Judgment on the Pleadings. (ECF No. 110.) On February 27, 2018, the Court granted Defendants' Motion to Dismiss the Third Amended Complaint for lack of jurisdiction. (ECF Nos. 116-117.) Specifically, the Court found "Mu Sigma lodge[d] a series of allegations against Defendants without demonstrating it suffered an injury in fact that is fairly traceable to the conduct of Defendants." (ECF No. 116 at 10.) The Court further concluded Mu Sigma, failed to establish it suffered an injury traceable to Defendants. (*Id.* at 12.)

On March 16, 2018, Mu Sigma filed a Forth Amended Complaint. (ECF No. 118.) The Affine Defendants now move to dismiss that Complaint. (ECF No. 125.) Mu Sigma opposes the Motion. (ECF No. 127.)

I.  **LEGAL STANDARD**

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Lance v. Coffman*, 549 U.S. 437, 439 (2007). "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "The standing inquiry focuses on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 360 (3d Cir. 2014) (citing *Davis v. FEC*, 554 U.S. 724, 734 (2008)).

A motion to dismiss for lack of standing is properly brought pursuant to Federal Rule of Civil Procedure 12(b)(1), because standing is a matter of jurisdiction. *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007) (citing *St. Thomas-St. John Hotel & Tourism Ass'n v. Gov't of the U.S. Virgin Islands*, 218 F.3d 232, 240 (3d Cir. 2000) ("The issue of standing is jurisdictional."); *Kaufman v. Dreyfus Fund, Inc.*, 434 F.2d 727, 733 (3d Cir. 1970) ("[W]e must not confuse requirements necessary to state a cause of action . . . with the prerequisites of standing.")). "Pursuant to Rule 12(b)(1), the Court must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the nonmoving party." *Ballentine*, 486 F.3d at 810 (citing *Warth v. Seldin,* 422 U.S. 490 (1975); *Storino v. Borough of Point Pleasant Beach,* 322 F.3d 293, 296 (3d Cir. 2003)). Nevertheless, on a motion to dismiss for lack of standing, the plaintiff "'bears the burden of establishing' the elements of standing, and 'each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of

8

the litigation.'" *FOCUS v. Allegheny Cty. Court of Common Pleas*, 75 F.3d 834, 838 (3d Cir. 1996) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992)). However, "*general factual allegations of injury resulting from the defendant's conduct may suffice*." *Lujan,* 504 U.S. at 561 (emphasis added).

Article III "standing consists of three elements." *Spokeo*, 136 S. Ct. at 1547 (quoting *Lujan*, 504 U.S. at 560). To establish standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id*. (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)).

"A district court has to first determine, however, whether a Rule 12(b)(1) motion presents a "facial" attack or a "factual" attack on the claim at issue, because that distinction determines how the pleading must be reviewed." *Constitution Party of Pa.*, 757 F.3d at 357. Under a facial attack, the movant challenges the legal sufficiency of the claim, and the court considers only "the allegations of the complaint and documents referenced therein and attached thereto in the light most favorable to the plaintiff." *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977) ("The facial attack does offer similar safeguards to the plaintiff [as a 12(b)(6) motion]: the court must consider the allegations of the complaint as true."). The Court "may dismiss the complaint only if it appears to a certainty that the plaintiff will not be able to assert a colorable claim of subject matter jurisdiction." *D.G. v. Somerset Hills Sch. Dist.*, 559 F. Supp. 2d 484, 491 (D.N.J. 2008) (citing *Cardio–Medical Assoc., Ltd. v. Crozer–Chester Med. Ctr.*, 721 F.2d 68, 75 (3d Cir. 1983)).

Under a factual attack, however, the challenge is to the trial court's "very power to hear the case." *Mortensen*, 549 F.2d at 891. Thus:

> [T]here is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*Id.* Moreover, in a factual attack, "the court may consider and weigh evidence outside the pleadings to determine if it has jurisdiction." *Gould Elecs.*, 220 F.3d at 178.

Here, Defendants assert a facial 12(b)(1) challenge. Therefore, the Court considers the allegations in the light most favorable to Mu Sigma. *Gould Elecs.*, 220 F.3d at 176; *Mortensen*, 549 F.2d at 891.

## II. DECISION

### A. Subject Matter Jurisdiction

Defendants argue Mu Sigma lacks standing because there is no privity of contract between Mu Sigma and Defendants or Mu Sigma and the Affine Founders, and therefore, Mu Sigma cannot allege: (1) tortious interference with prospective economic advantage; (2) tortious interference with contractual relations; (3) unfair competition; or (4) common law misappropriation of trade secrets. (ECF No. 125-4 at 8.) Specifically, they argue Mu Sigma's only attempt at satisfying an injury in fact is: "Mu Sigma has suffered irreparable harm due to Defendants' wrongful conduct." (ECF No. 132 at 4.) Defendants further contend Mu Sigma has not proved the Mu Sigma Agreement is "fairly traceable" to the challenged conduct of the Defendants because it is a bald assertion to say Affine Founders entered into that agreement to protect MU Sigma's proprietary information instead of Mu Sigma India's. (*Id.* at 5-6.) Mu Sigma argues it has standing because

the Affine Founders as Mu Sigma India's former employees had access to propriety information of Mu Sigma and by virtue of the Mu Sigma Agreement. (ECF No. 127 at 5.) Moreover, Mu Sigma asserts it does not need privity of contract to have standing because none of the counts asserted against Defendants require privity of contract. (*Id.* at 5-6.)

The Court agrees with Defendants. Mu Sigma has failed to prove Article III standing, and as "the party invoking federal jurisdiction, [Mu Sigma] bears the burden of establishing [standing]." *Spokeo*, 136 S. Ct. at 1547 (citing *FW/PBS, Inc.*, 493 U.S. at 231). To establish standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) *that is fairly traceable to the challenged conduct of the defendant*, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (emphasis added) (quoting *Lujan*, 504 U.S. at 560).

Mu Sigma lodges a series of allegations against Defendants without demonstrating it suffered an injury in fact that is fairly traceable to the conduct of Defendants. Again, the Court finds that Mu Sigma and Defendants are not alleged to have any direct privity of contract or relationship. Yet again, Mu Sigma argues it is in privity of contract with Defendants' founders, the Affine Founders by virtue of the Mu Sigma Agreement, and thus it has standing to bring this matter. However, neither the Fourth Amended Complaint nor Mu Sigma Agreement establish that relationship.

Instead, the Fourth Amended Complaint states "*as a condition of their employment with Mu Sigma India*, the Affine Founders also entered into [the Mu Sigma Agreement], with Mu Sigma, its subsidiaries, affiliates, successors *or* assigns . . . with the intent to protect inter alia Mu Sigma's proprietary information." (ECF No. 118 ¶ 20 (emphasis added).) The Mu Sigma Agreement similarly states, "[a]s a condition of my employment with Mu Sigma, Inc., its subsidiaries, affiliates, successors, or assigns (together, the "Company"), and in consideration of

11

my employment with the Company and my receipt of the compensation now and hereafter paid to me by Company." (ECF No. 118-4 at 9.) However, simply pointing to the Mu Sigma Agreement as evidence of privity is not enough, since neither that agreement nor Mu Sigma's allegations in the Fourth Amended Complain clarify whether the Affine Founders entered into that Agreement as a condition of their employment with Mu Sigma *or* its subsidiaries, affiliates, successors or assigns.

In fact, the record demonstrates the Mu Sigma Agreement was more than likely entered into with Mu Sigma India. Indeed, the Fourth Amended Complaint explicitly states, "[a]s part of their employment at Mu Sigma India, . . . [the Affine Defendants] entered into employment contracts with Mu Sigma India containing non-solicitation, no-disclosure, and non-competition clauses." (ECF No. 118 ¶ 19.) Moreover, Mu Sigma concedes, and the employment agreements attached to the Fourth Amended Complaint illustrate, the Affine Founders were employed by Mu Sigma India, not Mu Sigma. All documents attached to the Fourth Amended Complaint refer to Mu Sigma India; they are signed by Mu Sigma India; provide Mu Sigma India's address, telephone number, and fax number; and discuss the Affine Founders compensation in Indian money. (*Id.*)

Although Mu Sigma alleges it has standing because the Affine Founders, as Mu Sigma India's former employees, had access to propriety information of Mu Sigma, the Fourth Amended Complaint fails to allege the Affine Founders accessed Mu Sigma and not Mu Sigma India's proprietary information. Throughout the Fourth Amended Complaint, like with the previous complaints, Mu Sigma continues to conflate itself with Mu Sigma India using the general term "Mu Sigma." There are numerous paragraphs demonstrating this conflation, but the Court will only recite a few.

Paragraph 33 states, "Defendant are maliciously targeting MU Sigma by using ex-Mu Sigma employees' restricted insider knowledge and connections, and stolen confidential pricing systems and applications, and are undercutting Mu Sigma's prices." (ECF No. 118 ¶ 33.) Paragraph 38 states, "Defendants continue to use the knowledge and materials wrongfully obtained by the Affine Founders while employed by Mu Sigma to this day." (*Id.* ¶ 38.) As conceded by Mu Sigma, the Affine Founders were not employed by Mu Sigma, but Mu Sigma India. Moreover, Paragraph 36 of the Fourth Amended Complaint describes an incident that occurred in October 3, 2012, where Anand allegedly solicited a Mu Sigma customer because it had access using customer contacts it allegedly stole form Mu Sigma. (*Id.* ¶ 36.) However, that same paragraph refers to Anand as a "Mu Sigma employee," not Mu Sigma India employee. (*Id.*)

As such, the Fourth Amended Complaint and its Exhibits continue to lack details demonstrating Mu Sigma specifically and not Mu Sigma India suffered an injury in fact that is fairly traceable to the challenged conduct of Defendants, whether or not there was privity of contract. *Spokeo*, 136 S. Ct. at 1547(quoting *Lujan*, 504 U.S. at 560). Mu Sigma, "as the party invoking federal jurisdiction, bear[ed] the burden of establishing [standing]" and that it and not Mu Sigma India., as a separate entity, suffered an injury traceable to Defendants. *Spokeo*, 136 S. Ct. at 1547 (citing *FW/PBS, Inc.*, 493 U.S. at 231). Accordingly, Defendants' Motion to Dismiss for lack of jurisdiction based on standing is **GRANTED** with prejudice. (*See* ECF No. 116 at 12 (advising Mu Sigma this would be its "last" chance to amend the complaint to cure this same deficiency).)

## B. Remand

Mu Sigma argues that if the Court finds it lacks Article III standing, then this matter should be remanded to state court. (ECF No. 127 at 10.) Defendants contend remand of this matter would be futile. (ECF No. 132 at 12.)

Title 28 Section 1447(c) of the United States Code expressly provides, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." (emphasis added). The Third Circuit has interpreted that language to mean that where subject matter jurisdiction is lacking in a removal case, "the literal words" of § 1447(c), "require district courts to remand the case, *even if remand may be futile*." *Katz v. Six Flags Great Adventure, LLC*, No. 18-116, 2018 WL 3831337, at *8 (D.N.J. Aug. 13, 2018) (emphasis added); *see Bromwell v. Michigan Mut. Ins. Co.*, 115 F.3d 208, 214 (3d Cir. 1997) ("[W]hen a federal court has no jurisdiction of a case removed from a state court, it must remand and not dismiss on the ground of futility."); *Wheeler v. Travelers Ins. Co.*, 22 F.3d 534, 540 (3d Cir. 1994) ("[A] determination that there is no standing 'does not extinguish a removed state court case.' Rather, federal law 'only requires . . . remand . . . to state court.'") (citations omitted). "Indeed, because state courts are not bound by the constraints of the Article III case or controversy requirement, it follows that a 'lack of federal jurisdiction does not obviate the remand requirement of § 1447(c).'" *Katz*, 2018 WL 3831337, at *8 (quoting *St. Louis Heart Ctr., Inc. v. Nomax, Inc.*, No. 17-1794, 2018 WL 3719694, at *4 (8th Cir. Aug. 6, 2018)).

Because the Court has already determined Mu Sigma's allegations are insufficient to establish Article III standing, this Court lacks subject matter jurisdiction. *Finkelman v. Nat'l Football League*, 810 F.3d 187, 195 (3d Cir. 2016). And, because subject matter jurisdiction is

lacking, remand is mandated pursuant to § 1447(c). Accordingly, this matter is **REMANDED** to New Jersey Superior Court, Somerset County.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED** and the matter is **REMANDED** to New Jersey Superior Court, Somerset County.

Date: October 31, 2018 */s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**